Present:   All the Justices

GRAY & GREGORY

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 000293          January 12, 2001

GTE SOUTH INCORPORATED

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
J. Warren Stephens, Judge Designate

In this appeal of a final order entered in a condemnation proceeding, we consider whether the circuit court erred by excluding the landowner's evidence of the amount of rental income generated by the land subject to the taking.

GTE South, Inc., a Virginia public service corporation, filed a petition for condemnation as permitted by Title 56, Chapter 2 and Title 25, Chapter 1.1 of the Code to acquire by the exercise of the power of eminent domain three separate parcels of land owned by Gray & Gregory, a Virginia partnership.  The parcels of land that GTE South sought to acquire are located in the City of Virginia Beach and are identified as:  the International Parkway parcel that consists of 0.0574 acres; the London Bridge Road parcel that consists of 0.0649 acres; and the Salem Road parcel that consists of 0.0367 acres.

Gray & Gregory acquired each parcel in 1984 and leased each parcel to Continental Telephone Company of Virginia, GTE South's predecessor in interest.  Each lease contained a term

of 15 years with $30,000 rent paid in full for each lease at the commencement of each lease term. All real estate taxes, insurance premiums, and other costs and expenses were the responsibility of the tenant. The leases were in full force and effect on March 9, 1999, the date that the petition for condemnation was filed, which is also the date of the taking for purposes of determining just compensation.

GTE South filed a motion in limine requesting, among other things, that the circuit court

> "exclude any evidence of the fact that GTE South was leasing the property from the landowner at the time this action was filed. The amount paid for those leases is irrelevant because only evidence of transactions involving comparable property that 'are close enough in time and are on a free and open market so as to permit a fair comparison' are admissible."

The circuit court granted GTE South's motion in limine.

At a condemnation trial, GTE South presented evidence of the fair market value of the subject parcels. Dennis W. Gruelle, a commercial real estate appraiser who testified on behalf of GTE South, opined that the total fair market value for the parcels combined was $7,855. Gruelle also testified, on direct examination, as follows:

> "Q: Mr. Gruelle, you're familiar with the three leases that were on these parcels; is that correct?
>
> "A: Yes, sir, I am.

"Q:  Have the owners received a single payment since 1984 for any of these properties under the leases?

"A:  Under the leases they would not have received a single payment.

"Q:  This property was not generating income in 1985, '86, '87 all the way up through today, hasn't generated a nickel?

"A:  No, it hasn't."

On cross-examination, however, Gruelle responded as follows:

"Q:  That's because the rent was paid in one lump sum payment in advance at the commencement of the lease, was it not?

"A:  That's correct.

"Q:  So, the lease rights that GTE obtained in that property was paid for by GTE all in advance to cover the full 15-year term?

"A:  That's not a fair —

. . . .

"A:  It was not GTE.  It was Contel that received that payment.

"Q:  And Contel was purchased or otherwise acquired by GTE?

"A:  They received the site.  I presume they somehow gained ownership."

William J. Jonak, Jr., a professional real estate appraiser and consultant, also testified on behalf of GTE South.  He opined that the total "fair market value of these three sites [was] $15,000."

Gray & Gregory also presented evidence of the fair market value of these parcels. James K. Gregory, Jr., a partner in Gray & Gregory, testified that the fair market value of each parcel was $240,000. D. L. McKnight, a commercial real estate appraiser, testified that the fair market value of the three parcels combined was $513,000.

The condemnation commissioners returned a report which fixed the fair market value of each parcel at $20,000 for a total of $60,000. Gray & Gregory filed exceptions to the commissioners' report and requested a new trial. The circuit court denied this request and entered an order confirming the commissioners' report. Gray & Gregory appeals.

Greg & Gregory argues that the circuit court erred by refusing to permit it to present evidence that each parcel earned $30,000 in rent, paid in advance, for the 15-year lease which was in effect when the condemnation proceeding was filed. Responding, GTE South argues that the admissibility of evidence regarding prior real estate transactions in a condemnation case falls within the discretion of the circuit court and that the circuit court did not abuse its discretion. Continuing, GTE South, relying upon May v. Dewey, 201 Va. 621, 112 S.E.2d 838 (1960), and Collins v. Pulaski County, 201 Va. 164, 110 S.E.2d 184 (1959), argues that "[a]bsent evidence that a condemnor did not pay a premium to avoid the costs of

4

litigation, such as comparable sales, transactions with a condemnor are not admissible in Virginia condemnation actions."  We disagree with GTE South's contentions.[*]

The principles that govern the taking of property in condemnation cases are well established.  We have stated that the

> "measure of compensation for the property taken is the fair market value of the property at the time of the taking.  In determining fair market value, consideration is given to the property's adaptability and suitability for any legitimate purpose in light of conditions and circumstances that exist at the time of the take or that reasonably may be expected in the near future."

Lynch v. Commonwealth Trans. Comm'r, 247 Va. 388, 391, 442 S.E.2d 388, 389-90 (1994); accord Revocor Corp. v. Commonwealth Trans. Comm'r, 259 Va. 389, 394, 526 S.E.2d 4, 7 (2000).  Evidence of the amount of rental income generated by real property subject to a taking is a relevant factor that the commissioners are entitled to consider when establishing the fair market value of that property.  We established this principle in May, 201 Va. at 633, 112 S.E.2d at 847, when we held that evidence of the amount of rent paid by a tenant to a condemnee was admissible evidence to prove the value of the condemned land.  However, the lease, which generated the

---

[*] Our review of the record indicates that Gray & Gregory properly raised its objections in the circuit court and,

5

rental income, must be the result of an arms length transaction and not the result of collusion.  See 5 Nichols on Eminent Domain §§ 19.02, .03 (3d ed. 1997).

Here, the circuit court erred by refusing to permit Gray & Gregory to introduce in evidence the amount of the rent generated by each parcel.  Even though the total amount of the rent for each parcel had been paid at the inception of each lease, it is undisputed that each lease was still in effect on the date that the condemnation petition was filed.  And, GTE South failed to assert in the circuit court that the leases were not the result of "arms length transactions" or that the leases were entered into because of collusion.

Contrary to GTE South's assertions, the principle stated in Collins and May, regarding the sales price of land subject to condemnation, is not pertinent here.  In Collins, we stated:

> "It is generally the rule that the sum paid by the condemnor for similar land is not admissible because it is usually not a fair indication of market value. This rule of exclusion applies unless the offering party produces evidence sufficient to establish that the sale was not by way of compromise but voluntary and free from compulsion."

Collins, 201 Va. at 171, 110 S.E.2d at 189 (citations omitted).  We restated and applied this rule in May, 201 Va.

therefore, GTE South's contention that Gray & Gregory failed to preserve its alleged error is without merit.

6

at 634, 112 S.E.2d at 848. This rule, however, has no application in the present case because the evidence that the circuit court refused to admit in this case relates to lease payments and not the sale of real property as discussed in Collins and May.

GTE South also argues that "the lease transactions upon which [Gray & Gregory] bases its appeal were executed some fifteen years before the valuation date. They were simply too remote in time to provide a reliable basis for valuing the parcels, particularly given the absence of any evidence pertaining to the condition of the surrounding areas." We disagree. The leases were in effect on the date that GTE South filed its condemnation petition and, therefore, the amount of income generated by the leases was relevant to the fair market value of the parcels.

It is true, as GTE South asserts, that Gray & Gregory's expert witness did not rely upon the amount of income generated by the leases when he opined about the fair market value of the parcels. However, his failure to do so does not render this evidence inadmissible or irrelevant to the issue of the fair market value of the parcels. Additionally, the order granting GTE South's motion in limine prohibited the expert witness from informing the commissioners about the amount of the rents generated by the leases.

7

Accordingly, we will reverse the final order confirming the award, and we will remand this case to the circuit court for a new trial on compensation.

<u>Reversed and remanded</u>.